Carr, J.
The first objection taken by the appellant’s counsel is, that there was here no such affidavit as is required by the 43rd section of the land law, as the foundation of the proceeding by caveat. The obvious intention of that- provision, was to prevent fraudulent combinations and collusion. It does not, in terms, require the oath of the caveator: it requires that the person entering the caveat, shall file an affidavit, that the caveat is made with intention to procure the land for the person in whose name such caveat is entered. Here is a citizen of New York, perhaps never in Virginia, who in 1806, bought of Means, the original grantee, a large tract of land, lying in the extreme western part of the state. It was natural, that he should *383 employ some one in the part of the country where the land lay, to look after it; this was Arnold. Many years after Boardman’s purchase of Means, Hardman enters and surveys the land ; and this agent and attorney in fact enters the caveat, and makes oath that it was entered bona fide, and not in trust for the caveatee. Does not this affidavit give to the mind, as strong an assurance that this is in truth a real adversary proceeding, as if the caveator living in New York bad made the oath? I confess it does to me; and I think this in principle, very much like the case of Kyles v. Connelly, under the statute authorizing the issuing of attachments on affidavits. It is questionable with me, indeed, whether the party, never having urged this objection before, can be heard, for the first time, in the court of last resort; but if he can, he may, at least, be fairly judged by the facts disclosed to us here. Can any body look at this record, and doubt that this is really and truly an adversary proceeding? Would the caveator claiming to hold under a patent, collude with one who had a mere entry and survey? If this was mere collusion, would the caveatee have taken this appeal ? I cannot understand the motives which, in a case of collusion, would have dictated such a course.
The other objection strikes at the foundation of the caveat. It is, that a man cannot by caveat, prevent another from obtaining a grant for land, which he himself claims to hold by a perfect legal title. This, I confess bad been my impression. Without ever having had my attention particularly drawn to the subject, I bad taken it for granted, that the caveat law was meant solely to try imperfect titles. The provision of the statute, however, is very broad. It divides caveats into two classes: 1. If a party fails to return his plat and certificate within twelve months, or if the breadth be not one-third of its length, any person may enter a caveat; this is the first class, in which no right is claimed for the caveator, but he relies wholly on some imperfection in the works of the caveatee : 2. Or “ if any person shall obtain a survey of land, to which another hath by law a better *384 right, the person having such better right, may, in like manner, enter a caveat to prevent his obtaining a grant, until the title can be determined.” The better right here spoken of, is in no manner deSned. He has a better right, who bolds by patent, than he who has only his entry and survey. The case, therefore, must be admitted to fall within the letter of the statute. We must admit too, that it could never have been the intention of the legislature, to suffer two patents for the same land, to issue to different persons. However ineffectual the guards against this abuse may have proved (and they have been deplorably so) it is very clear, that the legislature meant, in good faith, to sell to adventurers, none but waste and unappropriated land. I can well imagine also, more than one reason, which should make it desirable to„the holder of land, to prevent other patents issuing for it, though he might believe that his own was valid and covered it. But yet if this were res integra, I should feel some doubt which construction was the true one. But I do consider the case as so far adjudicated, that I am by no means willing to disturb it. In Preston v. Harvey, 3 Call 427. .the caveator stood expressly upon the ground of bis patent; that was the better right, on which he entered his caveat; and the court expressly so stated it. Thus judge Roane says “ The object [of the caveat'] is to protect the appellee’s title to 187 acres of land, which he claimed by patent” he. In the second case of Preston v. Harvey, thé caveator, in like manner, stated his better title to be a patent; and the court came to the same conclusion, on the same gr'ound. So in Archer v. Sadler, the caveator rested wholly upon his deeds, and the long possession under them, which, he insisted, authorized the presumption of a patent; and the judges all argue that point, and come to the conclusion, that he must be considered as holding under a patent. It was said, that the point was never raised in these cases: true, but why ? The counsel were very able, and the cases were argued with great zeal, talent and learning; the judges seem to have examined the subject with great care : why was it, *385 that this point occurred to not one of them ? , Nay more, 1 .... that in the last case, they laboured with all their might to prove that the caveator should be presumed to have a patent, which, according to the doctrine now contended for, would have sufficed to turn him out of court? All this could only have been upon the ground, that they considered the law too clear, on this point, to suggest a doubt. I am, therefore, for affirming the judgement.
Cabeel, J. concurred.
Tucker, P. I do not think there is any thing in the objection, that the affidavit that the caveat was bona fide, was made by the agent instead of the party himself. But 1 am of opinion, that the caveat ought to have been dismissed, as the caveator had a patent for the land in controversy.
This case brings into discussion, for the first time, the question, whether a person who has already obtained his patent, can sustain a caveat against any other person, who is proceeding regularly to obtain a grant for the same land, on the ground of better right. I say it is the first time; for though it was fairly presented, and might very well have been brought into discussion, in Preston v. Harvey and Archer v. Sadler, yet it was not so discussed. The objection seems to have occurred to no one, and it ig readily admitted to have been taken for granted, that such a proceeding was regular. Our experience, however, admonishes us, that little confidence is to be placed in opinions thus loosely taken up; and this very case is a striking illustration of the truth. For, of those who have come into the discussion, and of those to whom the argument has been addressed, the greater part have always been under the contrary impression. For my own part, though I have been aware of the cases which have been cited, 1 never did hear—in the course of the discharge of my official duties in the western part of this state, where this subject is as familiarly understood as *386 the alphabet—I never did hear the caveat considered in any other- light, than as a proceeding invented by the statute, for bringing before a competent tribunal, a comparison of equities: I never did hear it spoken of as a proper remedy for a patentee, who having covered himself already with the title of the commonwealth, certainly needed no assistance from this summary remedy. It is much to be regretted, that our books furnish us so few cases on the subject, and that we have not access to the Kentucky reports, in which we could trace back the interpretation of this law, almost to the time when it began first to be put into operation. We are driven therefore to our own resources. We must look to the statute itself; its motives, its design, its plan and its provisions.
Until the revolution, the lands west of the Alleghany were locked up from the adventurer. The large quantities of waste and unappropriated lands in that part of the state, induced the legislature in 1779, to pass the statute of that year for the granting of those lands, with a view to encourage emigration, promote population, increase the revenue, and create a fund for discharging the public debt. A land office was accordingly opened ; and, as its provisions were calculated to flood the western country with adventurers, each of whom had a right to pick and choose for himself out of this immense wilderness, it was easy to foresee that innumerable litigations and conflicts of title would be the consequence. Against this the legislature, which certainly had more foresight of evil than prudence in guarding against it, anxiously provided. The anticipation of what was to happen appears from the preamble to one of the provisions of the statute; which was introduced with these words—“ and for preventing hasty and surreptitious grants and avoiding controversies and expensive lawsuits, be it enacted” he. It was, precisely, with the object of providing a mode of settling the innumerable controversies, which were obviously to arise between the innumerable competitors in this race for patents, that the caveat law was enacted. *387 It was not enacted with a view to provide for the trial of legal titles completed by patent; for the ordinary provisions of the common law in relation to these, had never been found deficient. It was enacted—the caveat tribunal was created—for the purpose of comparing the equities of persons who wore both in pursuit of grants for the same piece of land, and of deciding which had the better right. This very expression carries much meaning to my mind. The words right and better right, in connexion with the progress of the adventurer in pursuit of lands, have, I think, always had something of a technical signification. In our land law, I understand right and better right, as contradistinguished from, instead of comprehending, title by patent. As early as 1705, we hear of importation rights and settlement rights; and the laws provided, in case of not seating and planting, that the party should not only forfeit his grant, but also the rights on which it was founded; hero using the terms in opposite senses. And in the acts of 1779, we hear of importation rights, settlement rights, military rights, treasury rights: we find the word used, in a thousand instances, to designate merely that equitable interest which the claimant had to the lands for which ho desired to procure a patent. The statute of May 1779, ch. 4. is full of the use of the term in this technical sense; so also is the statute of May 1779, ch. 5. establishing the land office; both of these statutes, indeed, forming obviously but one act.
It was for the settlement of controversies respecting these rights, that the caveat law was made; it was for the speedy determination of the question, whose unpatented right was the better right, that this summary proceeding was instituted; for, until the decision of that question, the register could not know to which party to issuo the patent, and until the patent was issued, no taxes were paid, and the resources of the state were consequently impaired. How far this consideration mingled, in our legislation, with paternal care for the interest of the adventurers in the land lottery, will appear from the preamble to the 4th section of the statute of May *388 1783, ch. 29. 2 Rev. Code, p. 401. which recites the existence of the practice of fraudulent and collusive caveats, “ whereby much lands are covered from taxation.”
That the object of the legislature was merely to settle conflicting entries, I think is strongly indicated by a passage in the opinion of the venerable president of this court, in the case of Johnson v. Brown, 3 Call 267. “ It was foreseen, says he, by the legislature, that there would be interfering entries and surveys; and the caveat was the remedy for settling all those disputes prior to the patent, to avoid the inconvenience of that solemn instrument being involved in contests of that kind.” It was a remedy not wanted by the patentee ; for the patent was a shield to him against every thing but a bill in equity. His case could not, therefore, have been in the eye of the legislature, as he needed no such aid; and if he was not to have aid from the proceedings, there was no conceivable motive for comprehending his case within the provision. The provision, indeed, had its root in the ante-revolutionary course of proceeding, for some recollections of which we are indebted to the ‘industry of Mr. Leigh, in the compilation of laws prepared under his care. In 2 Rev. Code, p. 340. § 7. he refers to the act of 1732, ch. 11. § 10. 12. which recites, that controversies frequently arose concerning priority of entries for lands, and the rights to patents for them, which were properly cognizable before the governor and council, and makes certain provisions for witnesses &c. with a proviso, that the act should not be construed to give the council board power to hold plea of any matter properly cognizable before the courts of law; “plainly shewing,” as he truly says, “that the proceeding by way of caveat (though, in its nature, strictly judicial) was had before the council sitting as an executive body, and not as judges sitting in the general court;” and plainly shewing, I will add, that this prototype of the caveat law, altogether excluded the idea of that board holding cognizance of any dispute between patentees, or a patentee on one hand and the holder of an entry on the other.
*389 From this seedling our caveat law sprung; and unless the contrary clearly appears, we must take it that the stock is of the same character with that from which it has been derived. The caveat law is an invasion of the ordinary course common law proceedings. Upon familiar principles, it will be extended no farther than the legislative enactments will clearly justify. And as, anteriour to the enactment of it, the analogous tribunal was tied down to disputes about priority of entries and the rights to patents, we cannot, without strong language, attribute to the caveat court, the power of deciding upon cases where patent rights are involved ; and thus encounter “ the inconvenience of having those solemn instruments involved in contests of that kind,” and decided by a proceeding as summary and informal as those of a pie pondré court.
Let us then see, what there is in the provisions of the law, to justify the proposition, that a patentee may caveat upon the ground of better right than the caveatee. I say, upon the ground of better right; because there are four causes stated in the land law, which authorize the entering of a caveat : 1. failing to return the plat and certificate of survey in due time; 2. disproportion between the length and breadth of survey; 3. a better right on the part of the caveator; and 4. the failure to deliver a copy of the judgement in a caveat cause to the register in due time. Of the two first and fourth causes, it has been supposed any person may take advantage, whether he has interest in the matter or not. The third, with which we have concern, rests upon the ground of better right. As to this, it is provided, that “ if any person shall obtain a survey of lands to which another hath by law a better right, the person having such better right may in like manner enter a caveat.” This term better right, I have already said, I understand in reference to and in connexion with the various species of rights, before mentioned in the statute, not yet carried into grant. It seems to me to be the natural understanding. Our legislature was not in the habit of using that word right to signify *390 complete title by patent; while, on the other hand, the ex-apples are infinite, of the use of that term to designate rights not perfected by patent. Nor do I think it reasonable to suppose, that they designedly used one term to comprehend two different if not opposite things; namely, complete and incomplete rights—in other words, patents, and surveys not carried into grant; especially, if the legislature really designed so great an innovation upon the ante-revolutionary statute, which expressly inhibited that solemn instrument, a patent, from being involved in a contest of this summary character. Had such been the design of the legislature, it would have distinctly provided, that if any person should obtain a survey of lands, for which another hath a patent, or a better right by law, the person having such better right, might enter a caveat &c. But, instead of such an enactment, we have the phrase better right alone, which according to the construction contended for is to serve a double purpose ; to cover two kinds of interests intirely distinct; thus introducing, obviously, the greatest confusion in the residue of the provisions in relation to the caveat. For, in another section of the statute, it is provided, that if the judgement is in favor of the plaintiff, upon producing a copy of it and also producing a certificate of new rights on his own account, he shall be entitled to a grant thereof. Now, this is altogether intelligible when applied to a candidate for a patent. The certificate of new rights, which he must produce, is a certificate of survey in his own behalf, founded upon prior entry and warrant; and upon producing these, he is entitled to a grant. But how can the patent caveator be intended here ? How can he have new rights ?—a new survey upon a new entry and warrant on the land, which he already holds securely by patent? How is he to be entitled to a grant thereof, when he has a grant already ? To avoid these difficulties, it was said, that this part of the statute respects those only whose better right has not been carried into grant. And, thus, though the first part of the clause is construed to be general, the latter part is restricted to *391 one particular class of cases, while no sort of provision is made for that class, which particularly required provision, if indeed it was comprehended. To understand this, let us see the operation, or rather the want of operation, of this litigation upon the rights of the parties: let us see how completely both will retire from the forensic battle, with their labour for their pains. Each will have spent his money in the pursuit of the phantom of justice, and the victor and the vanquished will find themselves pretty much where they were. Take, first, the caveator: suppose he succeeds, the judgement will only be that he hath the better right, and the utmost that can flow from this judgement, is, that he will arrest the emanation of the patent to the caveatee. How is he benefitted by this ? The emanation of the patent could do him no harm; for if it should emanate, it would be junior to bis, and would therefore give way to him in a court of law. He has no reason to fear such an adversary except in equity. There, indeed, the junior patentee may file a bill, alleging that his entry and survey were prior, and demanding the conveyance of the legal title from the patentee. Will the judgement upon the caveat be a bar to any such demand in equity? I see no reason to suppose it; for if so, then we must take it for granted, that notwithstanding the caveator goes into the caveat court upon his grant, yet the parties are to go behind the grant, and compare the equities. Can this be so? Can it have been designed that this solemn instrument should have been involved in a contest in this summary proceeding, in which its foundations were to be examined, and the proceedings which led to it sifted and scrutinized, and this without any intimation from his adversary by pleading, caveat, or otherwise, of the rotten part of his case ? Better a great deal have permitted any person who wished to take up land to caveat a patentee (absurd as it would be in itself) for then he would at least have notice where he was to be attacked. But again; if, notwithstanding the patent, the equities are to be compared, why is it that a caveat, however well begun, must be dismissed, if the ca *392 veatee gets a patent? Hunter v. Hall, 1 Call 206. Guerrant v. Bagby, 6 Munf. 160. Why not permit the parties to go on to sift the equities ? The answer is, because the object of the caveat is frustrated. But why did not the legislature provide a power in the caveat court to vacate a patent, thus surreptitiously obtained, by its judgment? The only reason that can be given, is that it did not design to vest this important power in a tribunal acting so summarily. Further, if, as we are now supposing, the equities are to be compared, and the patent is not to be conclusive, why is it that after comparing the equities, and after establishing the superiority of his own entry, the junior claimant, the caveatee, cannot have the effect of his victory ? All the judgement he can have, is a judgement to vacate the caveat, not to vacate the patent also. And by the vacation of the caveat, all the advantage he gets, is to take out his patent, which, being junior, must, in all courts of law, be held inferiour to that of his adversary, and he must at last be driven into equity, to prove a second time the'superiority of his equitable title. No— if patentees may be caveators, I have no hesitation in saying, that the caveatee should not be permitted to go behind the patent in the caveat court. And if the equities are not compared;—if the legal title is to predominate; then, of course, the judgement in favor of the caveator is no bar to the assertion of the caveatee’s claim in equity. Thus, we are brought back to the position, that though the caveator succeeds in his caveat, his judgement will only prevent the emanation of a patent which he cannot fear, and still leave him exposed to an equity, which he well may dread. Then, as to the caveatee, I have already anticipated his condition after his victory. If the legal title is to prevail, whatever may be the state of the comparative equities, then it is obvious, that he must fail in the caveat, and be driven into equity. But, even if the practice under this novel construction of the law should prevail, of allowing the caveatee to go behind the patent of the caveator; yet, if he succeeds, he can have no judgement, to vacate the patent; and after *393 a vexatious lawsuit, he finds himself at the beginning of the race. He must now go into equity to establish his title again, I cannot, I. acknowledge, perceive any reason, upon such scanty grounds, to recognize a proceeding, which ascertains nothing, decides nothing.
I will only add a concluding remark upon the subject of the phrase better right. If it stood alone, there might be more ground for the pretension, that it is broad enough to comprehend patents as well as other rights. But when the statute speaks of a survey of land being obtained, “ to which another hath by law a better right,” is not this expression demonstrative, that the legislature was looking to those un~ perfected rights, which the party held by law, instead of that perfect, complete, and indisputable title, which he held by patent ?
Upon the whole, I am of opinion, that the judgement should be reversed, and the caveat dismissed; but the opinion of the court is, that the judgement be affirmed.