ROANE, Judge.
The appellants in this cause having a legal title to the land in question, by virtue of the patent of the 2d November, 1789, that title ought not to be divested, unless the Court should be of opinion, that, under the equitable circumstances of his case, the claim of the appellee is paramount.
This position necessarily brings into comparison the claims of the two parties; and, unless that of the appellee should be deemed preferable, it would be impertinent to enquire, whether, by any agreement stated or proved in the case, or by the act of 1779, independent of such agreement, the appellants were prohibited .from taking out their patent, during the pendency of the caveat in the District Court of Winchester ?
In making this comparison, we are not to infer, that the judgment of the District Court, dismissing that caveat, which is stated in the proceedings in this cause, asserted a right in the appellee to the land in question, or that the caveat was, as it respected the merits of the title, ground^ less: for, by the act of 1779, [c. 13, 10 Stat. Larg. 50,] a caveat may be dismissed, because not authenticated in a particular manner; or, because the survey was not within the time limited by law: or, because the breadth of the survey is not equal to one third of its length. But, in any of those cases, the title to the land is not decided; for, any person, even the same caveator, may, nevertheless, after-wards by another caveat, on the ground of having himself a better right, oppose a grant. . I mention this by way of controverting a position, in the' Chancellor’s decree, infer? ring, that because the caveat in this case was dismissed by the District Court, it must be presumed to have been groundless: meaning thereby, as I understand it, in point of right; and that the right to the land in question, was asserted by the judgment of that Court, to have been in the appellee: to which right, it is the object of the decree to restore him.
*181 Taking it, therefore, as a clear position, that the rights of the present parties, as relative to the lands in controversy, have never been compared together, nor the one preferred to the other, by the judgment of any Court; and that the dismission of the caveat does not necessarily imply the consequences which the Chancellor has inferred from it, we are now to make that comparison, and say whether, under the circumstances of this case, the legal title of the appellants must yield to the superior claim of the appellee? The act of 1779, prescribing the mode of locations, by the strict terms of it, pre-supposes a survey; for, without such survey, no person can strictly conform to its terms, in making a location: but, that act unavoidably requires, and has uniformly received, a liberal construction in this respect. It is not in my power, nor is it necessary in this case, to draw a line as to the particular extent of this latitude; but as, on the one hand, a strict adherence to the terms of the act, would produce infinite disputes and litigation; so, on the other, the spirit, as well as letter of the act, requires that we do not wholly disregard the land marks which it has established, nor abandon the interests of posterior locators or adventurers.
This can only be done by holding locators to a reasonable degree of strictness in their entries.
The entry of Popejoy, is for 400 acres of land, adjoining the land of Lord Fairfax, at the mouth of Mill Creeh. These last words are descriptive of the particular tract of Lord Fairfax’s land, which the land located was to adjoin, but they are not descriptive of any particular spot in the entry just preceding the one in question, and contained in the same instrument; that entry being only to adjoin the lands of Abraham Keykendall, deceased. But this tract of Lord Fairfax, lies on the west side of the great branch of Potowmac river; and, in order to come at the land in question, the appellee, beginning where he himself supposed his entry required him to begin, must not only take in the appropriated lands of other persons, but cross a river in itself considerable, and perhaps the largest in that country. In order to sustain this entry, as applicable to the land now in dispute, it ought at least to have been shewn, that it was usual in surveys in that part of the country, to run across that river. Evidence of a contrary nature, though, has been given; as may be seen in the deposition of Henry Ashby. But, in truth, a location stated to be adjoining to a tract of land which only lies on the west side *182 of that river, or (as is the case in the copy of the entry con-Gaining the assignment to the appellee,) stated to be on the west side of the river adjoining a survey of Lord Fairfax, can never be construed to extend to land on the east side of the said river. It is not, as to such land, a sufficient entry under the before-mentioned act of Assembly. Other adventurers could not reasonably suppose it to extend to such land. But if, in truth, the locator intended it to extend to such land, (of which, however, there is abundant evidence to the contrary, in the case,) it is better that he and those claiming under him, ■ should sustain a loss, arising from their own negligence and omission, than that third persons should, by means of such negligence and omission, suffer an injury, which no prudence or foresight of their’s could have averted.
For these reasons, I think the legal title of the appellants should not have been disturbed; but, that the bill of the appellee ought to have been dismissed.
LYONS, Judge.
The only difficulty is with respect to the caveat. If it had been heard and determined on the merits, it would have been binding until reversed; but, it was not, and, therefore, the case is open on the merits. Neither Popejoy or the surveyor, expected to find land on the east side; and, the purchaser could not be deceived, as.he took the assignment on a copy of the entry; which was complete notice.

PER CUR.

Let the decree of the Court of Chancery be reversed, and the following decree made in its room.
The Court is of opinion, that the entry of Terence Popejoy, with the surveyor of Hampshire County, on the 17th day of December, 1783, for four hundred acres of land, on the South Branch in the proceedings mentioned, under which, the appellee claims title by assignment, to part of the land on the east side of the said branch, included in a patent since granted to the appellant David Hunter, did not express, nor was the same as understood by the surveyor, and acknowledged by the said Popejoy, intended to include any land on the east side of the said branch. That the appellee could not have been deceived, as to the situation of the land so entered for, at the time of the purchase; as the copy of the entry on which the assignment was made by the said Popejoy, describes the land *183 entered for, as lying on the west of the South Branch. That the appellants having afterwards located and surveyed land as vacant on the east side of the branch, and obtained a patent for the same, by which, they acquired a legal title thereto, ought not to be deprived of that title by the appellee, who hath not shewn a better equitable title; and, although, the caveat in the proceedings mentioned, was dismissed, it does not appear that the same was-heard and dismissed on the merits of the case, but rather the contrary, and, therefore, no bar to the claim of the appellants under their location and patent: which was open for the decision of the Court of Chancery, and ought to have been in their favor, and that the said decree is erroneous. Therefore, it is decreed and ordered, that the same be reversed and annulled, and that the appellee pay to the appellants, their costs by them expended in the prosecution of their appeal aforesaid here; and, this Court proceeding to make such decree as the High Court of Chancery should have pronounced: It is further decreed, and ordered, that the appellee’s bill be dismissed, and that he pay to the appellants their costs by them, about their defence in the" said High Court of Chancery expended. *

[* See Noland v. Cromwell, 4 Munf, 155.]