TUCKER, Judge.
Carter Page entered a caveat in June 1797, against Millér in the district court for 1300 acres of land lying in Buckingham county, and assigned six reasons against the emanation of a patent. I shall pass over the first, and proceed to the second, reason assigned, viz : ‘ ‘Because Miller’s entries are too vague, indefinite, and uncertain; and are not made with the precision required by law.”
The law requires, that every person desirous of locating a land warrant on any particular waste and unappropriated lands, shall lodge the warrant with the chief surveyor of the county, and direct the location thereof so especially and precisely, as that others may be enabled, with certainty, to locate other warrants on the adjacent residuum, (1779, ch. 3). The meaning of the legislature evidently appears, from the terms of this act, to have been, to give every purchaser of a land warrant an equal right to locate the same to the best advantage, without difficulty, and without interfering with each other, giving to the first applicant the preference: and, by a subsequent provision, giving to each subsequent applicant the right of inspecting any prior entry supposed to be *made for the same lands ‘by' any other person. The object of which provision evidently was to enable each subsequent applicant to make locations so special and precise with reference to former locations as that any future applicant might pursue the same course as to his; and thereby interfering claims and numberless law suits be prevented. That such was the intention of the law, cannot, I think, be doubted, if we consider either the directing part, that the location shall be made specially and precisely ; or the reason assigned for such precision, that others might be enabled to locate, with certainty, the adjacent residuum. These last words shew, that the legislature contemplated the probability that, in the rich and fertile spots particularly, locations would be made contiguous to each other. It would, therefore, be inconsistent with the spirit of the law to suppose, that it should countenance such vague and uncertain locations as might deter others from making contiguous en *1074 tries on the adjacent residuum, from the uncertainty of the course which the first locator might think proper to pursue in making his survey. If a locator, desirous of entering for lands lying upon a narrow creek, should designate a particular tree, or rock, as the beginning of his location for a thousand acres of land, without any other description, how could any person desirous of locating the adjacent residuum, proceed to make his entry? The former might extend the base of his survey, east, west, north or south, or to any of the intermediate points; and until he should think proper to make his survey, no other locator could, with any safety, or certainty, approach the spot. I therefore concur, not only in the opinion delivered in Hall v. Hunter, 1 Call, 209, that locators are to be held to a reasonable degree of strictness in their entries; since without, infinite confusion and difficulty, as well as delay, must ensue to the prevention of the execution of the law; which certainly had respect to the settlement and improvement of the country, as well as to any revenue to be derived from so trifling a price for the lands; but even carry my interpretation of the law still further, as appears to have been *done in the case of Wilson v. Mason, I Cranch, 99; and concur with the supreme court of the United States in thinking, that “from the circumstances under which the act for establishing the land office passed, as well as from the expressions of the act, it is apparent that the entry was intended to give complete notice to other purchasers, that the land located was already appropriated.”
On the 15th of August, 1791, John Milter, the appellant, made an entry with the surveyor of Buckingham county, for “1000 acres of land, between the lines of Henry Cary deceased, on both sides of Hatcher’s creek, beginning on the same.”
The jury find, that the lines of Henry Cary’s inclusive patented land, cross Hatcher’s creek six times, and that there are two corners near the creek: and from an inspection of the plat of survey filed in this cause, it appears that it is more than a mile and a half from the spot where one of Henry Cary’s lines crosses Hatcher’s creek in one place to where it crosses it in another.
It was asked by the caveator’s counsel, at which of these spots, or at which of the four intermediate spots, where the lines of Henry Cary cross the creek, did the locator intend to fix his beginning? I cannot pretend to answer the question for him; nor do I consider it as answered by his counsel, who said there were but few spots on Hatcher’s creek, where the beginning is called for by the entry, where he might have made his beginning. The verdict shews there might have been twelve different spots; and the plat shews that the distance between the two most remote is at least a mile and a half, as I have before stated.
But this want of precision is supposed to be helped by the decision of this court in the case of Field v. Culbreath, 2 Call, 547. In that case, however, the entry was for all the vacant lands between the lines described: whereas, here it is for a thousand acres; and there might have been ten times that quantity. Miller’s own survey shews there were 1300 acres within those lines. Now, with what certainty *could any person desirous of entering for the adjacent residuum of 300 acres, have made his entry? Until the survey was actually made, which was not done for more than five years after this entry, no person could know in what part of the 1300 acres, Miller’s 1000 acres would be laid off, or the 300 acres be left. Consequently, this case differs from that of Field v. Culbreath, most essentially. Nor can I find, either in adjudged cases in our country, or in the law, any principle which will justify the suspension of another’s right to enter for these vacant lands, until Mr. Miller should have determined his will, where to fix the beginning and the course of his location. For, although the beginning was known, yet unless it were also known what course was to be run from that beginning, no holder of a land warrant could be able with certainty, to locate the same on the adjacent residuum. Neither do I know of any mdans, (except by making a subsequent entrj', and proceeding to survey the lands and obtain a patent,) by which the first locator could be compelled to make and return his survey. For, although the law originally allowed twelve months only, within which it must have been done, yet it is well known that, except for one or two very short periods, the time has been uniformly prolonged. So that the first entries made under the act might have been kept in force, without any survey, down to this time, unless the law had permitted subsequent entries to be made, where the first were not sufficient to give complete notice that the land was appropriated. The common law, we are told, abhors uncertainty; and this statute appears to me to be framed in the same spirit. Miller’s entry of the 15th of August, 1791, was, therefore, I conceive, as to all persons holding land warrants, and desirous of locating the same, void on account of its uncertainty.
On the 30th of June, 1791, previous to any survey made by Miller, Carter Page made his entry for 1200 acres of land, designating the beginning; the lines of Henry Cary’s former patent; the distance and termination of those lines, with their several courses, as described in Cary’s patent. *It is objected, that these are now impossible lines, on account of the variations of the magnetic needle, since the year 1736, the date of Craig’s patent. It was well observed, by the caveator’s counsel, that the reference is to the lines, i. e., the marked lines, and not merely to magnetic courses. It calls for particular objects at particular spots; and these lines appear to be his own former boundary, with which he may. be presumed to be sufficiently acquainted, and in running which he was in no danger of being a trespasser. The other objection was also satisfactorily answered, viz: That his beginning was within another man’s lands. Be it so; but the jury have found that he made the same with the consent of the owner of the land; and, if he choose to waive the trespass, no other *1075 person has a right to complain. Besides, if it were a corner to his own lines, as well as Anderson’s, he had an indubitable right to begin his entry there.
On the 25th of July following, Miller made his second entry, for 300 acres, between the lines of Henrj Cary, and a former location made by himself, as before, for 1000 acres, when surveyed between the lines aforesaid, viz: beginning at the corner near Buckingham branch, &c. ; thence along the lines of said Henry Cary, so far as will include the quantity of 300 acres, between Henry Cary’s survey, and the said Miller’s former location, and the line for 1007 poles. The plat of the survey of this 300 acres shews it to be wholly included within the area of Page’s location made about a month before. Consequently, if Page’s entry be valid, this must be void.
November 12th, 1796, Page made a second entry for 400 acres in a different place, but within the area of the plat of 1000 acres surveyed for Miller by virtue of his first entry.
The second entry made by Page, being within the area of Miller’s 1000 acres survey, neither affects, nor can be affected, by Miller’s second entry. If Miller’s first entry be good, this last entry by Page is void. But if Miller’s first entry be void, both Page’s entries will prevail over the *second entry of Miller, unless the doctrine contended for by the counsel for the latter be just, that, although his entry be vague and uncertain, it will not be merely void, but must prevail over a subsequent entry, if there be not quantity sufficient to answer both, according to the decision in Jones v. Lewis, under the legal government.
Whatever may have been the grounds of that decision, it is sufficient to say, that it was prior to the existence of the law under which the present parties claim. We are now to pronounce upon a rule prescribed by a written law, and not according to one which we do not know.
The same question was propounded in the supreme court of the United States in the case of Wilson v. Mason. And I cannot express my own opinion more satisfactorily to myself, or more clearly to others, than by adopting the decision of the court in that case.
“The caveat is a remedy given to prevent a patent from issuing in certain cases where the directions of the law have been violated to the injury of the commonwealth, or where some other person hath a better right. The case before the court is that of better right.” The terms of the law are expressly so.
I have already stated my opinion to be, that a location not made with due precision and certainly, is a void act, and constitutes no title whatever. “Consequently, (as was said by the court in Wilson v. Mason), the land remains vacant, and liable to be appropriated by any person holding a warrant. It is difficult to conceive that a remedy designed to enable an individual, who has made his entry in conformity to the law, to prevent another from obtaining a grant for the lands he has entered, should be withheld from any person whose entry entitles him to the land he has located. It is not less difficult to impute to the legislature an intention to protect a survey, to which the law denies all power of appropriating the land it comprehends; or an intention of carrying such survey into a grant, while another has legally appropriated to himself the land thus to be granted. It ''would be difficult to state a case to which the principle that a remedy should be so extended as to meet the mischief, would apply more forcibly than to this.” 1 Cranch, 101.
Upon these grounds, I am of opinion, that the caveator has, by law, a better right to the lands in question, than the caveatee; and therefore, without touching upon the remaining points which were argued in this cause, I am of opinion, that the judgment of the district court ought to be affirmed.
ROANE, Judge.
There is no difference of opinion among the judges upon any point except one. But I differ from the rest of the court as to the certainty of Miller’s entry. The construction given by them to the act of 1779, would have rendered the execution of it impossible in many parts of the country; and therefore as its effect cannot be graduated according to the stale of population in the place where the entry is made, it is better to lay down a rule, which -would be equally convenient to all.
The entry of Miller, compared with the survey, exhibits as much precision as can reasonably be required. The bottom lands, which every locator would naturally wish to acquire, afford a very good index to the entry, and impel the mind towards that part of the land as the place intended to be located. Besides, Henry Cary’s surveys correspond with this; and his descendants ought not to be permitted to say, that it was not natural to Miller to begin there, although it was natural to him. Page’s entry is not necessary to be taken notice of, but I have examined it, and think it has little more to boast of than this. There is no essential difference between this case and that of Field v. Culbreath, 2 Call, 547: Both were intended to comprehend all the vacant lands between certain lines ; and the survey was to determine the figure of each. The case of Hunter v. Hall, 1 Call, 206, does not resemble this; for there the entry merely referred to the lands of lord Fair-fax, and mentioned no particular part of them: but here it was impossible to mistake it: And, from the decree in that case, no *lawyer would have been at a loss to decide that the entry in the present case was good. In the case of Currie v. Martin, 3 Call, 28, no opinion was expressed as to the certainty of the entry, but it was sanctioned by a side wind; and the entry of Martin himself appears to have been admitted on all sides, although it was not more certain than this. In the case of Consillart v. Bristoe, it appears that this court, in 3790, affirmed an entry .at least’ as vague as this, Hughes’s Kentucky Rep. 46, 48; and that book abounds in cases where entries more uncertain have been supported by the courts of that country. The entry in the case of Wilson v. Mason, 1 Cranch, 45, was not more precise than *1076 the present; yet it was not impeached by the bar or the court; on the contrary, it was said by the court to be sufficient, but that it was not pursued by the survey which was made eight miles off. In Currie v. Martin, it was said, by Mr. Call, that the land office had been examined, and that few entries were found to be more certain than that, (which was not more precise than Miller’s); and if so, it is a strong argument in favour of the one now under consideration ; for long usage and the common error of the people ought to be regarded. 1 Wms. 99, 410; 1 Atk. 140; 3 Atk. 762; 1 Wms. 223; 3 Atk. 68. I think, therefore, that the judgment ought to be reversed, and judgment entered for the appellant.
CARRINGTON, Judge.
The first question ,in the cause is, whether the lands were waste and unappropriated? And I think they were. The circumstances relied upon do not afford a presumption to the contrary. For, in the first place, it does not appear by what authority. .Mayo’s survej's were made; if done wi.th a view to acquire the land, better evidence might have been had by resorting to the record books of the surveyor. And the length of possession, and the payment of the taxes, will not create a more favourable inference, since both may have happened without a grant; which, if it had ever issued, would probably have been found *upon the books in the land office. . Of course, the lands were unappropriated at the time of Miller’s entry.
The next question then is,, whether his entry is a sufficient one or not? The law requires that the location shall be so specially made as that others may be enabled with certainty to.locate their warrants on the adjacent lands: which has not been attended to in the present instance; for nobody but'Miller himself could have told, from the entry, at what point of the creek, ' which was upwards of a mile long, he meant to begin ; nor what part of the vacant land he meant to cover by his survey: So that a future adventurer was left in the dark,, and could not tell where to begin. For, if he went to either end, Miller might begin there, and defeat him; and the same consequences would have resulted, if he had selected any other part. The cases referred to do not support the entry.. That of Hunter v. Hall, 1 Call, 206, certainty does not; but the contrary; for the entry there was not sustained. That of Field v. Culbreath, 2 Call, 547, was not like this; for there the entry was for all the vacant lands between certain lines; which necessarily included the whole, and therefore there could be no surplus: But here the'entry is not for the whole, but a part only; and therefore it should have been made-with such precision, as that others might have known how to locate the residuum, without .difficulty. The case of Consillart v. Bristoe, I am not acquainted with; but it probably depended upon circumstances, and the unsettled state Of the country where the entry was. made. In Wilson v. Mason, 1 Cranch, 45, the entry Was not like this, and the judgment turned upon the defect in the survey; which was mad.e at eight miles distance from the place of entry. In Currie v. Martin, 3 Call, 28, there was some diversity of opinion among the judges as to the certainty of the entry; and the court gave no opinion on it, but the cause went off, upon the want of title in Martin to the warrant,' as there was no proof that it had been assigned to him. Thus then it appears that none of the cases apply; and therefore the *cause is to be decided upon the act of assembly; which requires a degree of certainty, which- was not attained in the present case; and therefore I am clearly of opinion that Miller’s entry is void, for the vagueness and uncertainty of it.
With respect to the question of costs, it is discretionary in the court to allow them, or not, and as the district court saw cause to allow them, I see no reason to disturb their judgment: which I think ought to be affirmed throughout.
I/VONS, President.
Caveat cases must always depend upon the circumstances; and therefore the- act of assembly, affording a general rule, is a better guide than particular adjudged cases. Miller’s entry, in the present case, is certainty too vague: It states no particulars, and wants that precision which would have enabled others to locate their warrants with certainty (the great desideratum in the act of assembly); for it -would have been impossible for a future locator to have told where to begin, as he could not, from the entry of Miller, have told where the latter would make his survej. The entry, consequently, does not pursue the genius and policy of the law, which intended to disembarrass future adventurers from difficulties of this kind. I am therefore of opinion, that it is utterly void, and his second entry, depending on it, is equally exceptionable: Of course, the judgment of the district court is perfectly right upon this point: For I give no opinion upon the others made by the ap-pellee’s counsel.
It has been rightly observed, that costs are discretionary with the court in cases of this kind; and as the district court thought proper to allow them, and no specific objection to it is shewn, I see no reason to disturb the judgment.
Judgment affirmed.