The Judges pronounced their opinions.
JUDGE TUCKER,
after stating the case. As there is nothing in any part of the depositions to prove the charge of fraud in returning the survey, without such survey having ever been made, or in any manner to invalidate the matters contained in the several answers of the Howards, I pass them over.
The naked question upon this view of the subject is, whether the complainant has made out such a case as to entitle him to the aid of a Court of Equity. And I conceive he has not. The answers of the Howards state, that Thomas Welch, of whom they purchased in 1778 or 1779, had previously resided on the spot several years. They had a right to presume that he had some title thereto, which, if not perfected by a patent, was recognised by the act of May, 1779, c. 12; and, when informed that there was danger of that title being disturbed, had a right to take any legal means whatsoever for securing the same. Mary Howard’s entry, made the 9th of October, 1788, for this purpose, cannot therefore be deemed fraudulent, as against the complainant. If, by his entry of the 30th of September preceding, he had obtained an actual legal priority, he had nothing to do but to proceed to survey his entry, and obtain a patent for the lands; or, if she proceeded to survej' also, then the law was open to him to file a caveat, in which case his legal priority must have been established, unless she had produced some elder title founded in law. But he tells us he did sue out a caveat. Why then did he not prosecute it with effect? Or, if one caveat was improperly dismissed, why did he not sue out another? for the dismissal of one caveat, unless it be upon the merits, neither decides the title to the lands, nor bars another subsequent caveat, if brought within proper time, (a) There was certainly time enough between the date of the defendants’ enhy in October, 1788, and their survey in October, 1796, and, 300 from that period till the time *of the emanation of their patent, (which could not be until the survey had remained six months in the register’s office,) to have tried his title to a patent, by that mode of proceeding. The law (for aught that appears to the contrary) was competent to have done him complete justice. Having omitted to pursue that course, as he might have done, he has, I conceive, no right now to ask for the aid of a Court of Equity.(b) If Mary Howard’s location of lands, within which his location might be supposed to lie, was against conscience, what must we say of his entry and location of a place which he knew to have been in the possession of her husband, and Welch under whom he claimed, for twenty years before? If equity condemns the former as against conscience, the latter is ten times more liable to its censure.
With regard to the second question, and upon which the Chancellor seems to have decided the cause, namely, whether Depew’s entry was too vague and uncertain, I am decidedly of that opinion. From an inspection of the plat it will appear that the fifty acres might have been laid off, so as to “join the lands of John Howard, and his own land on Welch’s Run,” at any spot between the letter K. and the letter T. in the plat, leaving a surplus of from ISO to 200 acres, within that area, while his entry did not amount to more than a fourth part of the quantity therein. The distance from these points is considerably more than a mile and a half; while his survey, as actually made, only touches Howard’s 68 acre tract, at the point B., leaving that point immediately, and running a zig-zag course of five different lines, before it arrives at his own line, on Welch’s Creek, down which it runs only sixty poles, and from thence to the beginning, without even touching Howard’s lands at any other point. Fifty, or even five hundred different plats might have been laid down within the same limits, equally conformable to the terms of his entry. Can this be called a compliance with the law, which prescribes that the party shall direct the location of the lands for which he makes an entry, so specially and precisely, as that others 301 may be enabled, *with certainty, to locate other warrants on the adjacent residuum? I forbear to take up the time of the Court with a repetition of the reasons offered by me in the case of Miller v. Page, in support of the like opinion in that case;(c) and shall conclude with saying, I think the Chancellor’s decree is right, and ought to be affirmed.
JUDGE ROANE
The entry of Mrs. Howard, of March 14th, 1782, seems to have been justly abandoned on all hands as incompetent : that of Depew, on the contrary, of September 30, 1788, taken with reference to the actual situation of the land, as exhibited by the connected survey, seems to be sufficiently certain, under the just construction of the land-law, by this Court in many instances, by the Supreme Court of the United States,* and the Courts of the State of Kentucky. Having had occasion to refer to those decisions, particularly in the case of Miller v. Page, (MS.) I shall not again enter into the subject; but have no doubt but that the rejection of the entry now in question, would shake many titles in this Commonwealth, which have not been *120 carried into grant. On the trial of a caveat, therefore, I should have been of opinion that that entry, so taken, was sufficient.
But this is a resort to a Court of Equity for relief against a legal title: and it is readily admitted that such resort may be had, under circumstances making the interposition of equity just and proper; as in the case of Jones v. Williams, (a) where the caveat had been dismissed through an accident attending the summoning of the plaintiff’s witnesses; but, then, this must be made to appear to the satisfaction of the Court, as was done in that case. In the case before us it is alleged that the caveat of the appellant was dismissed, because he could not attend to it on account of the small-pox, or because two of the ap302 pellees resided out *of the State, so that the summons could not be served upon them. With respect to the first fact, there is no proof of it whatsoever: and as to the second, the caveat would not have been dismissed, I presume, (if it were not served,) if the appellant had shewn to the Court that its non-execution did not proceed from any neglect of his. I infer this from the 35th section of the land-law. (b)
On neither of the grounds, therefore, was the appellant competent to come into equity. But, if it were otherwise, as to his admission into the Court; the appellees having got the legal title, that title will not be disturbed, unless the appellant has a superior right in- equity to recover the identical land in question. So far from this being the case, it is in proof, from the confessions of the appellant’s father, at a date posterior to the time of making the subsequent entry of the appellee, that he did not consider this land as vacant, and therefore supposed it was not located or appropriated thereby. His own construction of his entry, therefore, invalidates it, in,a Court of Equity, as applying to this land; which might have been otherwise, under my construction of the land-law upon this subject, in the absence of all proof touching such a construction on his part. I am therefore of opinion that the decree be affirmed.
JUDGE FLEMING.
It is unnecessary to add any thing to what has been said. I think it a very just decree; and it is affirmed by the unanimous opinion of the Court.

Note. In Miller v. Page, (May, 1806,) Miller's entry was for 1,000 acres, between the lines of Henry Cary, deceased, on both sides of Hatcher’s Creek, beginning on the same.” Judge Boane was of opinion that this entry was sufficiently certain; but the rest'of the Court decided otherwise. — Note in Original edition.

 Hunter v. Hall, 1 Call, 206.

 3 Call, 259, 266, Johnson v. Brown; 1 Wash. 118, White v. Jones, Staples v. Webster, October, 1804, MS.

 May, 1806, MS.

Note. See Wilson v. Mason, 1 Cranch, 88, 89, 92.

 1 Wash. 230.

 1 Rev. Code, p. 146.