Moncure, J.
I am of opinion that Harper and Weston are entitled to a grant for the 7429 acres, 2 roods and 12 perches of land claimed by them, and am therefore compelled to dissent from the opinion of the court in these cases.
A caveat is substantially and emphatically an equitable proceeding; and these being cross caveats, in which the caveators claim on the ground of “ a better right,” the decision of their conflicting claims must depend on the result of a comparison of their respec *510 tive equities; unless, indeed, it shall appear that there is no equity on either side; in which case it would be. proper to dismiss both caveats according to the opinion of the court.
If the parties have any equity to compare, all will agree that that of Harper and Weston is superior. They seem to have acted Iona fide. They discovered that there was a tract of waste and unappropriated land in the Dismal Swamp, and desired to acquire title thereto in the mode prescribed by law. They did not, and until there was a survey could not, know the quantity of land contained in the tract. “ From the nature and situation of the land, lying as it does in an almost impervious swamp, often covered with water,” it was difficult, if not impossible, to make anything like a correct estimate of the quantity. They had two land warrants amounting together to 1110 acres, which they say they supposed would cover it; and accordingly, by virtue of those two warrants, they made an entry for the said tract on the books of the principal surveyor of Norfolk county, on the 7th of December 1844, minutely setting ont in the entry the abuttals of the land. And one of them stated to the surveyor at the time of making the entry, that if there was any land within the boundaries of the entry above the quantity expressed in their warrants, he intended to purchase additional warrants to cover the surplus. The surveyor, or his deputy, proceeded in due time to make the survey; but after making some progress, it was ascertained that the quantity of the tract would greatly exceed that of the two warrants. Before the survey was concluded, and perhaps as soon as it had progressed far enough to enable them to ascertain what amount of additional warrants it would be necessary to purchase to cover the surplus, they purchased two other warrants, amounting to 6400 acres, more than enough to cover the surplus, and handed *511 them to the surveyor for that purpose; who made an entry by virtue thereof on the 11th of September 1845, “for all the unappropriated land contained within the bounds of the entry made by them December 7th, 1844; said entry,” as was stated in the latter entry, “ having been surveyed and found to contain more land than their warrants contained at that time.” The survey was finished on the 11th of October 1845, and the plat and certificate thereof were duly returned into the land office, it being stated in the certificate that the survey was made in pursuance of the two entries which were made by virtue of the warrants aforesaid. On this state of facts is founded the claim of Harper and Weston to a patent for the land in controversy.
What are the facts on which the claim of Baugh and Seguine is founded? On the 29th of July 1845, long after the first, and shortly before the last entry of Harper and Weston, Baugh and Seguine made an entry in the books of the same surveyor, by virtue of a warrant for 6000 acres, for all the unappropriated land contained within the same boundaries specified in the first entry of Harper and Weston, stating in the entry that it was intended to comprehend all the vacant land that might be left after Harper and Weston should have surveyed 1110 acres, entered by them December 7th, 1844, within the same boundaries. Before and at the time of making their said entry, Baugh and Seguine knew of the said claim of Harper and Weston, to all the unappropriated land within the said boundaries ; and Seguine declared that his object in making the said entry was to retaliate upon the said Harper for some loss to which he supposed Harper had formerly subjected him. On the 7th of August 1845, Baugh and Seguine made another entry in the books of said surveyor, by virtue of a warrant for 1190 acres, for all the unappropriated land contained within *512 the bounds of their entry of July 29th, 1845, after said entry should be satisfied. A survey was made in pursuance of these two entries of Baugh and Seguine, in the spring of 1846, and the plat and certificate thereof were returned into the land office. When the surveyor was about to commence the survey for Baugh and Seguine, Harper and Weston were requested to select a location for 1110 acres, the quantity of land mentioned in their warrants, upon which they made their entry of December 7th, 1844; but they refused so to do, and claimed the whole land by virtue of their entry and survey. Baugh and Seguine then had 1110 acres of the land laid off for Harper and Weston, and the balance surveyed for themselves under their entries and warrants aforesaid; and they now claim to be entitled to a patent for the said balance.
Such are the conflicting claims involved in these cross caveats; and the bare statement of them is sufficient plainly to show that Harper and Weston have superior equity, and “ the better right;” unless it can be made to appear that their first entry was void, and the entries of Baugh and Seguine valid, or that all the entries are void.
The majority of this court is of opinion that all of them are void, for uncertainty. It must prabably be conceded, on the authority of the cases cited in that opinion, that the first entry of Harper and Weston is void for uncertainty; and it follows that the two entries of Baugh and Seguine are void for the same cause. But why is the last entry of Harper and Weston void? There may have been uncertainty as to the precise location of the 1110 acres under the first entry, but there could have been none as to the location of the whole quantity contained in the boundaries under both the entries. The professed and manifest object of Harper and Weston was not to acquire title to 1110 acres, but to all the land in the pre *513 scribed boundaries. Their warrants and entries were but machinery used to effect this acquisition. The first entry was, of necessity, conjectural, and intended to be conditional; or, at all events, to be helped out by another entry or other warrants if necessary. If the second entry does not, as it probably cannot, relate back to the first, so as to override intervening conflicting entries, it ought at least to take effect from its date, and draw down the first entry to its assistance, so as to entitle the parties to a patent or a survey made under both entries. Their first entry, and both of the entries of Baugh and Seguine being void, it was perfectly competent for them, on the 11th of September 1845, to make one entry under all their warrants, which were more than sufficient to cover all the land. If they had done so, all would admit that they would have been entitled to the land. Did they not do so, in substance at least, if not in form also ? What more could they have done than they did do ? What more can they do than they have done, if now they must run a race with Baugh and Seguine for priority of entry? If after the decision of these cases they shall enter for all the lands under all their warrants before Baugh and Seguine make a similar entry, they will then certainly be entitled to the land. Have they not already done so, in substance at least, if not. in form also ? Has not every requisition of the law been already complied with, and every object which the law has in view been already attained ? The law prescribes no form of entry. It requires the party to lodge the warrant with the surveyor of the county in which the land lies, and to direct the location thereof so specially and precisely as that others may be enabled with certainty to locate other warrants on the adjacent residuum. If this was not done by the first conjectural entry, was it not done by the second entry ? Did not the second entry locate the whole land under *514 all the warrants; and was it not plain after the second entry that there was no adjacent residuum within the prescribed boundaries ? Look to the form of the second entiy and the reason therein assigned for making it t that is, the first “ entry having been surveyed and found to contain more land than their warrants contained at that time.” Showing that the object of Harper and Weston, from the first, was to cover the whole land and have but one survey and patent, however many warrants and entries might be necessary to be used in effecting the object. The survey is then completed, and the plat and certificate, under both the entries and all the warrants, are returned into the land office for a patent. Do they not afibrd sufficient ground for a patent ? Has not the applicant, plainly and irrevocably, appropriated his warrants and applied them to this identical land; and is not the contract between him and the commonwealth complete, remaining only to be finally executed on the part of the commonwealth by the issuing of the patent ? Look to the form prescribed by law for the .patent. . It issues upon the survey, and mentions the consideration money, the date of the survey, and the bounds of the land as therein set out. All the information required for the issuing of the patent is furnished by the plat and certificate; the amount of consideration, the numbers and amounts of the different warrants, the date of the survey, and the bounds and quantity of the land. What then can the register say against the issuing of the patent; and what better case can be made before him ? There was never intended to be more than one entry of this land by Harper and Weston. Their object, as we have seen, was to acquire the land by one proceeding and title. Their second entry, as it is called, is but a repetition of the first, under the authority of their subsequently acquired as well as their former warrants. There is a unity of object in both *515 of the entries. They are not conflicting, and it seems to be incongruous to call them two entries. Harper and Weston did not wish to yield the advantage may have acquired by their prior entry; and it was not necessary for them to do so in order to give valiJ ° dity to the second, as an entry under all the warrants. The first entry, if void at all, was void not because it was not sufficiently specific as to the tract of land which was intended to be thereby acquired, but because Harper and Weston had not paid for as much land as was embraced in the tract, and therefore had not then a right to appropriate the whole tract. When, however, they had purchased other warrants sufficient, with those they before had, to cover the whole, and made their second entry, connecting it, as they did, with their former, all ground of objection to their right was removed. Full justice had then been done to the commonwealth by paying for all the land in the tract, and full legal notice had then been given to all other persons wishing to acquire the same land, not only of the identity of the tract, but of its having been fully paid for. The second entry, in the form in which it was made, as effectually gave this notice as if the first had been formally withdrawn and the second made as an original independent entry under all the warrants.
These views of the question seem to me to be reasonable, and are opposed to no decision that I have seen, unless it be the case of Young v. Wilson, 1 A. K. Marsh. R. 609, cited in the opinion of the majority of the court. If that case were plainly opposed to the views I have expressed, I would not be inclined to follow it, great as is my respect for the court by which it was decided. Nothing short of a “ binding authority” would induce me to say, that to entitle Harper and Weston to a patent for the land they claim, it is necessary for them to do over again what they have in effect *516 already done, especially when the consequence might be a loss of all the land to them and a corresponding gain to their adversaries. It does not appear from the report of that case, according to my recollection of it, that the _ two warrants under which the two entries were made, were together sufficient in quantity to cover all the' land embraced in the bounds of the entries. Indeed the contrary would rather seem to be inferrible from the facts stated. Nor does it appear, if I remember rightly, that the party intended from the first to acquire title to a specific .tract of land, and used his warrants and entries only for the purpose of effecting that intention. He may have intended by his first entry only to acquire title to the number of acres mentioned in his warrant; but finding that some land would be left in the entry after satisfying the warrant, he may then have intended by his second entry to appropriate so much of the residue as his second warrant would cover. He may have contemplated separate surveys and patents. These features, if they exist, as I suppose, in that case, rendered the entries void for uncertainty, according to the cases cited in the opinion of the majority. But none of them exist in these cases, in which, as we have seen, the- forms of the entries, and the whole res gestee plainly manifest an intention on the part of Harper and Weston from first to last to acquire title to the identical tract of land in controversy, whieh their warrants were more than sufficient to cover.
I am therefore for declaring that Harper and Weston are entitled to the land in controversy, and that a patent should be issued to them'therefor, and not to Baugh and Seguine for any part of it. As to the form of the judgment which ought to be rendered by this court in the cases, I might have some difficulty. Perhaps I would have to agree with the rest of the court in dismissing both caveats. Of course I would concur *517 in the dismission of the caveat of Baugh and Seguine, for we all agree that they show no right, and must go out of court, whether their adversaries have any light or not. As to the necessity or propriety of dismissing the caveat of Harper and Weston, there may be room for doubt. The only reason specifically assigned by them for their caveat is their prior entry of December 7, 1844. No reference is made in the caveat to their entry of September 11,1845. They no doubt supposed that the controversy depended on the relative priority of the conflicting entries. They did not anticipate that any of them would be considered by this court as void for uncertainty, and therefore they did not see the propriety of relying on an entry subsequent to those of their adversaries. The assignment of reasons in their caveat, was in fact however a mere matter of form. The grounds of their claim were well understood by .their adversaries, who had previously entered a caveat against the issuing of a grant to them on a survey, plat and certificate which fully set out those grounds. The two caveats were tried by the same jury, who found the same1 special verdict, mutatis mutandis, in each case. All these entries and all other material facts were found in the verdicts. Judgments on the verdicts were pronounced by the same court at the same time. And the judgments now come up together to be reviewed by us. Substantially they are one case, and involve but one question; and it might be admissible, under the peculiar circumstances, to dispose of them as one case, and to regard everything appearing in one as part of the other also. This however is a question of little importance and only Involves a matter of costs. It would perhaps be more correct to regard the cases as separate, and to dismiss the caveat of Harper and Weston also, upon the ground that the reasons assigned therein are insufficient. But whatever may be the proper form of the judgment to *518 be given by us in the cases, it ought, I think, expressly to declare that Harper and Weston and not Baugh and Seguine are entitled to a patent for the land; and thus to put an end to all controversy on the subject between the parties.
Allen, J.
This is a contest for land under adverse claims. The appellees filed their caveat against the issuing of a grant upon an entry and survey made for the appellants; and the appellants thereafter filed their caveat against the issuing of a grant to the appellees. Each caveat is filed upon the ground of better right in the caveators to the land in controversy, and sets out the nature of the right on which the caveators respectively claim the land. The 17th section of the general land law, 1 Rev. Code 325, provides- that every person having a land warrant, and being desirous of locating the same on any particular waste and unappropriated lands, shall lodge such warrant with the chief surveyor of the county, &c.; and he shall direct the location thereof so specially and precisely, as that others may be enabled, with certainty, to locate other warrants on the adjacent residuum; which location shall bear date the day on which it shall be made, and shall be entered in a book, &c. The 38th section, p. 329, gives the caveat, providing amongst other things, that if any person shall obtain a survey of land to which another hath by law a better right, the person having such better right may enter a caveat to prevent his obtaining a grant, until the title can be determined; such caveat expressing the nature of the right on which the plaintiff therein claims the said land. In the construction of this statute it has been always held, so far as I can perceive, that the caveator must show a better right to the land in controversy. He cannot recover upon the ground of the weakness of his adversary’s claim; and that in such controversies the validity of the plaintiff’s *519 title is necessarily the first subject of enquiry. Hunter v. Hall, 1 Call 206; Walton v. Hale, supra 194; Hendricks v. Bell, 1 Bibb’s R. 138; Justices of Allen County v. Allen, 2 A. K. Marsh. R. 31; Whitley v. Shirley, 3 Id. 131. The law requires the caveat to express the nature of the right on which the plaintiff elaims the land. The object of the caveat is in part to notify the caveatee of the grounds on which the caveator claims the better right, that he may come prepared to controvert it; and it would be a surprise on him to permit the caveator to, abandon at the trial the right which he had set forth in his caveat as that under which he claimed,, and prove a different right. Such a course would lead to injustice, and is in conflict with the terms of the statute, which requires the nature of the better right to be expressed in the caveat. In the case of the Justices of Allen County v. Allen, 2 A. K Marsh. R. 31, the court held in the construction of the act regulating proceedings in caveats in that state, which enjoins upon those entering caveats to express therein the cause why a grant should not issue, that the plaintiff can only rely on the points set forth in the caveat as to the cause thereof. The principle of that decision would apply with greater force to the construction of the provision in the act of 1819. The caveator • cannot be ignorant-of the better right under which he claims, and he is-subjected to no hardship in being required to rely at the trial upon the right so expressed. But he may be ignorant of all the objections to the claim of the caveatee.
The location, to comply with the law, must be made so specially and precisely, as that others may be enabled, with certainty, to locate -other warrants on the adjacent residuum. The entry confers an equitable right to a portion of the -public domain; it withdraws It as long as the entry is in force, from other waste and unappropriated land; its calls should therefore be so *520 sjiecial and precise, as to enable other adventurers, by the use of proper diligence, and the application of those rules of construction established by the courts, to ascertain by a survey and lay off the land so appropriated. The calls of the entry must give notice to subsequent locators, what land has been appropriated. The fact that the locator may be able by proof to identify the land will not suffice, if there is nothing in the calls of the entry to point to and set apart some specific tract of land. In McArthur v. Browder, 4 Wheat. R. 488, it was argued that as the words of the entry were the words introduced into the grant, if they were too vague to appropriate the land when used in the entry,, they must be too vague to appropriate it when used in the grant. In commenting on this argument, Ch. J. Marshall, in delivering the opinion of the court, remarked: “When'lands are granted, a description which will identify them is all that is necessary to the validity of the grant. But identity is not all that is necessary to the validity of an entry. The law requires that locations should be made with such certainty that .subsequent purchasers may be enabled to locate the adjacent residuum. All grants are founded on surveys: They,recite surveys, and all that is required in ejectment is to prove that, the land claimed is that which was surveyed. More is required in a contest respecting an entry. Nothing is more common than for courts to declare an entry void for uncertainty, notwithstanding the clearest proof that the land claimed and that located are the same.”
Bearing these rules in mind, it remains to enquire whether the caveators in each of the caveats under consideration have that better right, the nature of which has been expressed in the caveats filed by them respectively. The better right so expressed depends upon the validity of the locations made by them; and in determining that question the entries must be con *521 sidered in the order in which they were made. It appears from the facts found by the jury, that the appellants Harper and Weston, on the 7th of December 1844, by virtue of two land warrants belonging to them, one for 920 acres, the other for 190 acres, making together 1110 acres, entered for all the unappropriated land contained within the following boundaries, viz : Beginning at a blackgum standing near the intersection of two ditches, &c. &c., (describing the land by ■metes and bounds,) the boundaries being the lines (with perhaps one exception,) of adjacent tracts called for, to the beginning; the quantity supposed 1110 acres. It is further found that the appellants claimed the whole of the land within their entry of the 7th December 1844, as waste and unappropriated at the time they made their entry. That there was no evidence showing that the same or any portion thereof was otherwise than waste and unappropriated at that time, and that the quantity of land within the bounds of the said entry of December 7, 1844, as ascertained by the survey, was 7429 acres, 2 roods and 12 perches; and the certificate of survey is found and made part of the verdict. The first question which arises upon the facts so found is, whether this entry was sufficiently special and precise to comply with the requisitions of the statute; and if not, how far it is aided by the other facts found by the jury ? Any person may acquire title to so much of the waste and unappropriated land of the commonwealth by paying the price fixed by law. Upon payment of the price a warrant is granted by the register, specifying the quantity of land, and authorizing a surveyor to lay off and survey the same. This warrant the purchaser is to lodge with the surveyor when he locates it; and the surveyor, after making his survey, is to deliver to his employer a fair and true plat and certificate of survey, expressing, among other things, the quantity contained, and *522 also the nature of the warrant and rights on which such survey was made. The locators, when they made their entry of the 7th December 1844, were the owners of warrants amounting to 1110 acres; that quantity of land they'had purchased and were entitled to withdraw from the public domain. By their entry they located and described a body of land containing within the boundaries specified 7429 acres, 2 roods and 12 poles. It is manifest that the surveyor would not have been authorized to survey for them that quantity of land under the warrants lodged with him. If the fact appeared on the plat and certificate of survey, it would show upon its face a want of authority in the surveyor to make it. If not authorized to survey the whole, how could he survey a part so as to satisfy the calls of the entry ? Each call is entitled to the same consideration. There is nothing to confine the locator to one in preference to the others. A subsequent locator could not, by the use of any diligence, be enabled with certainty to locate other warrants on the adjacent residuum. The law conferred no authority on him to require the first' locator to designate which of the calls of his entry he would' abandon or adhere to. The consequence would be that any adventurer, though the purchaser of but 100 acres from the commonwealth, could by making his entry by specific boundaries, and including a much larger quantity therein, withdraw the excess from the public domain for an indefinite period, and until it suited his convenience to .acquire land warrants sufficient to cover all.
The validity ,of such an entry has been the subject of judicial decision in numerous cases in Kentucky, where, as Judge Tucker remarked in Hardman v. Boardman, 4 Leigh 386, we can trace back the interpretation of this law almost to the time when it began first to be put into operation. The first case on this point which I find, is the case of Bush v. Jameson, 3 *523 Bibb’s R. 118. It seems to be tbe leading case on this question, and so far as I have been able to trace it, has been recognized and followed in all the subsequent ■ cases in the Kentucky Reports involving the same proposition. The entry there called to begin at a beginning corner of another survey, to be bounded by three lines described in the entry, and to include all the vacant lands in the boundaries described for quantity. The court, after some remarks on the want of certainty in the description, says: “Another objection occurs to the entry which we are clearly of opinion is fatal. The two traces and the line of the survey called for, compose a triangle of nearly equal sides, in which is contained more than three times the quantity called for in the entry. That no one could lawfully appropriate more than the quantity to which he was entitled, is a position too clear to admit of controversy; otherwise the absurd consequence would follow, that upon a warrant of 1000 acres or less the whole vacant land of the county might have been appropriated.” It had been urged that the line of the survey, the first line called for in the entry, should be taken as the base, and the survey extended so far along the two traces as would include the quantity. This was decided to be inadmissible, “ as by the terms of the entry all the vacant land in the boundaries mentioned was included in the location ; that there was no reason for preferring the line of the survey, first called for in the entry, to the other sides of the triangle. From necessity one line of a survey must be named before another ; and there was nothing to indicate any intention in the locator to prefer the line first called for as a base, to the other lines. That the case differed materially from the case of an entry which gives a definite base, and calls for an indefinite extension of the lines from the base, so far as will include the quantity of vacant land. In the latter case, the lines extend *524 ing from the base being indefinite as to their extent, may be limited by construction ; but in the case then before the court, all the lines of the triangle being equally definite, no one of them more than another can be controlled by construction.”
In Marshall v. Russell, 1 A. K. Marsh. R. 271, the boundaries called for contained about double the quantity of land to which the entry was entitled. The court refer to Bush v. Jameson, and hold that in conformity with that decision the entry could not be sustained, though a surplus off a few acres ought not to vitiate the whole entry. That if the whole of the boundaries were described by sensible objects, so that there could be no reason for one to yield to or control the other, the entry could only be good for so much as would be covered in common by surveys of the proper quantity made upon each of the boundaries. But if the boundaries were so extensive that surveys might be made on different parts of the boundaries without covering any land in common, the entry would be good for none. See also Young v. Wilson, 1 A. K. Marsh. R. 609 ; State v. McDowel, 2 A. K. Marsh. R. 184; Helm & Reed v. Crawford, 3 A. K. Marsh. R. 570.
In the entry under consideration specific boundaries are called for, and the locator designed to appropriate all the land included therein. Every call is entitled to equal consideration. An inspection of the plat and certificate of survey shows that the boundaries were so extensive that surveys of the quantity called for might be made on different parts of the boundaries without covering any of the land in common. The entry could be sustained at any one of the several places called for in the absence of the others; and the calls make the whole too uncertain to attach itself to any particular. For all or'any of these causes, the cases referred to show that the entry is bad for uncertainty.
*525 The decisions of the courts of Kentucky upon the construction of the land law of May 1779, from which the provisions of the act of 1819 on this subject are • derived, have always been regarded with the highest respect by this court and the Supreme court of the United States, though not entitled to the weight of authority. Upon the point presented by the entry of the appellants of the 7th December 1844, the construction put upon the law seems to me to be the only one it will bear, and should be followed. That entry tested by the principles established by all the cases referred to, must be regarded as being void for uncertainty. If the entry does not comply with the law and is void for uncertainty, I do not perceive how it can be aided by any other facts found by the jury.
In their caveat the appellants claim to have the better right to the whole of the land embraced in the entries of the caveatees, that the land embraced in the entries of the caveatees was not waste and unappropriated, because the appellants had made an entry on the 7th of December 1844, embracing all the lands subsequently entered by the caveatees. The nature of the right on which the appellants claimed the land is expressed to be their entry of the 7th of December 1844; and that failing them, nothing remains upon which their caveat can rest. But if we could look beyond the nature of the right expressed in their caveat, there is nothing, as it seems to me, which could affect the judgment of the court upon the caveat filed by them.
It is found that one of the appellants at the time he made his entry with the principal surveyor, on the 7th of December 1844, stated to him, that if the boundaries contained more land than the quantity expressed in their warrants, he intended to purchase additional warrants to cover the whole. That the appellants never waived their title to any portion of the land con *526 tained within the boundaries of their entry of the 7th December 1844, but frequently and publicly spoke of the land as being valuable, and of their claim to the whole; and that the appellees before their entry, knew of the claim of the appellants to all the unappropriated lands within said boundaries; and that one of the appellees declared that his object in making the entry of the appellees was to retaliate on one of the appellants for some loss he supposed said appellant had subjected him to.
These matters are, as it seems to me, beside the controversy, and have no bearing upon the rights of the parties. The field for acquiring a right to the waste land of the commonwealth, is open to all; a declaration of an intention to purchase a warrant is of no avail, he must be the holder of the warrant before he can take any step to acquire any portion of unappropriated land. When he enters, he does so at his own hazard. It is a race of diligence between the different adventurers. Notice of an intention to enter, or of an entry which is void on its face, cannot affect the conscience of the subsequent locator. Neither the intention to enter nor the void entry can confer any right, and he must show a better right. Nor can the motives which may have operated on the adverse claimant have any influence upon a question like this, upon the trial of a caveat'; a remedy not devised to investigate questions of fraud, nor appropriate for such enquiries; but mainly intended where the better right is the point in question, and the land has not been previously'granted, to enquire which party, if either, has so proceeded under the land law, as to entitle himself to a patent. Questions of fraud in fact, whereby one party got the legal advantage to the prejudice of another’s equitable right, could be more properly determined in another mode of proceeding, in which a direct issue could be raised.
*527 But it is argued that other facts were found by the jury which will in. some way aid the defective entry of the appellants. It is found that the appellees, caveatees in the cross caveat filed by the appellants, made two entries embracing the land in controversy, one dated the 29th of July 1845, and the other the 7th of August 1845, and that the appellants having ascertained that the boundaries called for in their entry of the 7th December 1844, included so large an excess over the quantity their warrant authorized them to locate, after the entries of the appellees, viz: on the 8th of September 1845, purchased more land warrants, and on the 11th of September 1845, made an entry in pursuance of these warrants in these words: “ September 11th, 1845, Samuel Weston and John Harper this day enter by virtue,” &c. (reciting the two warrants of the 8th September,) “ for all the unappropriated land contained within the bounds of the entry made by them December 7th, 1844, said entry having been surveyed and found to contain more land than their warrants contained at that time.
This does not purport to be an amended entry. It is a new, separate and distinct entry, which if valid, could have been surveyed and carried into grant, although the first entry had been withdrawn or abandoned. It was not the intention of the appellants to interfere with or withdraw their first entry, and then re-enter under all their warrants. This would have been abandoning the priority which they supposed their first entry gave them, and have let in the entries of the appellees. Even if it had been designed as an amended entry, and so appeared on its face, it could only retain its original character, so far as it was unchanged by the amendment, and so far as it was changed, it would be a new entry, so that at last supposing the entries of the appellees to have been valid, this subsequent entry treating it as an amend *528 ment, could not have availed in this contest; for as to all, except the quantity expressed in the warrants recited in the first entry, it was a new entry subsequent to the entries of the caveatees and appellees.
But the entry itself, treating it as it was manifestly designed, as a distinct entry, made in virtue of the warrants therein recited, and having no other connection with the first, except so far as it calls for the objects named in the first, is liable to the same objection for uncertainty. It calls for all the unappropriated land within the bounds of the first entry. The first entry is shown not to have appropriated any particular part; and until it could be fixed upon some particular part of the land included in the bounds called for, no one could point out the surplus to be covered by the second entry. The first entry might be invalid, or be withdrawn or abandoned; and in that event, the second would be equally uncertain with the first; there being a large surplus within the boundaries, and nothing to show what particular portion was covered by the entry.
The question arising on this point has, like the first, been decided by the courts of Kentucky. In the case of Young v. Wilson, 1 A. K. Marsh. R. 610, the boundaries described in the first entry contained nearly double the quantity of the entry. The second called to include the surplus land within the boundaries described in the first entry. The court say: “ The first entry could not appropriate the whole of the land thus described; and as it pretends to appropriate no one part in preference to any other, it is manifestly void for uncertainty, according to the principles settled in Bush v. Jameson. The second entry, considered as a separate and distinct one, for the quantity therein mentioned, is upon the same principles, equally uncertain and void. But it is contended that the two entries should be taken together as one entry, for the *529 whole quantity mentioned in both, having effect from the date of the second entry. To thus consolidate the two entries, would be confounding things which are separate and distinct, and doing that for the locator which he has not thought proper to do for himself. For the second entry only purports to be a location of the quantity of 330 acres, and does not profess to modify in any manner the first entry, blit leaves it as was originally made.” I have given the words of the court, as the case in all its material circumstances, is precisely like the present; and as it seems to me, disposes of the questions in conformity with the clear requisitions of the law. I think the appellants have failed to establish either the right expressed in the caveat, or to show by the facts found, any better right in themselves to the land in controversy, or any part of it.
And as it regards the appellees, the caveators in the first caveat, the authorities referred to are equally decisive- against the validity of their entries. They caveat on the ground of the better right, and the nature of their right as expressed, is a claim by virtue of two entries. The first dated the 29th July 1845, for 6000 acres for all the unappropriated land contained within the following boundaries: “ Beginning, (describing the boundaries called for in the entry of the appellants of the 7th December 1844,) quantity supposed 6000 acres. The above entry is intended to comprehend all the vacant land that may be left in the above named boundaries after Harper and Weston shall have surveyed 1110 acres entered by them December 7, 1844, within the same boundaries.” This entry is liable to the same comments as the second entry of the appellants. Its locality depends upon the locality of the entry of the appellants; and like it is too uncertain until identity can be given to the first. The entry under consideration cannot be said to appropriate any one part in pre *530 ference to the other. The second entry of the appellees was intended to cover a surplus remaining after ■ satisfying the entry of the appellants of the 7th December 1844, and the first entry of the appellees, and is still more uncertain than their first ,• for locality cannot be given to it until locality is given 'toc the two preceeding entries, as it is made dependent on both. I think therefore that all the entries, as well of the appellants as of the appellees referred to and found by the jury in each case, were invalid and void for uncertainty ; and that a judgment should have been entered, (both causes having been heard together,) declaring that the entries as well on the part of the caveators as the caveatees in the original and cross caveat were void for uncertainty; and dismissing each caveat with costs to the caveatees.
Daniel, Lee and Samuels, Js. concurred in the opinion of Allen, J.
Judgments reversed: And both caveats dismissed.