Lee, J.
This is a caveat from the Circuit court of Pocahontas county, under the provisions of the statute in relation to the mode of acquiring title to waste and unappropriated lands within this commonwealth, originally introduced into our system by the act of May 1779, ch. 13, entitled “ An act for establishing a land office, and ascertaining the terms and manner of granting waste and unappropriated lands.” Neither party has the legal title, but it is a contest of equities, both claiming under entries made with the surveyor of Pocahontas. The entry of the caveatee was made on the 23d of July 1849, that of the caveator was made on the 4th of May 1850. The caveatee, it appears, made a second entry for nine hundred and seventy acres of land, under which also he claims ; but this was not made until the 2d of August 1850, after he had made a survey upon his first entry, and after the caveator had made his entry. Each party has made a survey conforming, as he claims, to his entry, and as they are found to conflict, the question is, which has the better right ? Thus the validity of the respective entries is directly and necessarily involved, and each party has in turn assailed the validity of the entry of the other.
To constitute a valid entry, there must be a reasonable degree of certainty and precision in the description which it gives «f the subject intended to be appropriated. In the case of a grant, if the description be such that when verified by the proofs of what is found on the ground, the land can be identified, it is sufficient, and the grant can be maintained : but more is required in the case of an entry. It is not sufficient that the land can be identified by means of the proofs of the land-marks called for, which the private know *314 ledge of the claimant can supply ; but' the entry must be made with that degree of certainty and specialty that a subsequent locator may be enabled, by the exercise of due care and reasonable diligence, to appropriate the adjacent residuum. The objects which it calls for must possess that notoriety in themselves, or must be so particularly described, that others, by using such care and diligence, may readily find them. These principles have been repeatedly illustrated in the numerous cases which have been decided by the courts, involving their discussion. Of these I will content myself with referring to the following: Hunter v. Hall, 1 Call 206; Currie v. Martin, 3 Call 28; Miller v. Page, 6 Call 28; Moore v. Whitledge, Hardin’s R. 89; Smith v. Smith, lb. 190; Buckner v. Feagins, 2 Bibb’s R. 138; Davis v. Davis, 2 Bibb’s R. 134; Bodley v. Taylor, 5 Cranch’s R. 191; Finley v. Williams, 9 Cranch’s R. 164; Watts v. Lindsey’s heirs, 7 Wheat. R. 158; Johnson v. Pannel’s heirs, 2 Wheat. R. 206; Matson v. Hord, 1 Wheat. R. 130; McArthur v. Browder, 4 Wheat. R. 488; Littlepage v. Fowler, 11 Wheat. R. 215; Garnett v. Jenkins, 8 Peters’ R. 75; Key v. Matson, Hardin’s R. 70.
Entries in Virginia and Kentucky, made for the purpose of acquiring title to waste and unappropriated lands, in the mode prescribed by law, usually first refer to some prominent and notorious object which serves to direct attention to the particular neighborhood in which the land is situate, and then call for some particular object or objects which shall describe it with precision. The former has been termed the “ general” or “ descriptive” call, the latter the “ particular” or “locative” call of the entry. Both must possess that reasonable degree of certainty which will put a subsequent adventurer duly upon his guard, and the locative calls must be found to be within the limits embraced by the descriptive calls, and they should *315 properly be consistent with the latter and with one another: Johnson v. Pannel's heirs, 2 Wheat. R. 206; McDowell v. Peyton, 10 Wheat. R. 454: Though, in certain cases, where all the calls in an entry cannot be satisfied, the court, for the purpose of sustaining it, will reject such as appear to be vague or repugnant, and hold to those appearing to be certain and consistent. Marshall v. Currie, 4 Cranch’s R. 172; McIver's lessee v. Walker, 9 Cranch’s R. 173; Massie v. Watts, 6 Cranch’s R. 148; Shipp v. Miller's heirs, 2 Wheat. R. 316; Evans v. Manson, 1 Bibb’s R. 4; Patterson v. Bradford, Hardin’s R. 101; Bosworth v. Maxwell, Ibid. 205.
Where there are several distinct and independent calls in an entry, it is not required that all the objects thus called for should be known and recognized by the public, or that they should all be described with that specialty that a subsequent locator can readily find them; but it is necessary that some one or more of the leading calls should be thus known, or so described that other persons, with due care and proper diligence, may be led to ascertain their positions, and thus to distinguish the land appropriated from the adjacent residuum. Garnett v. Jenkins, 8 Peters’ R. 75; McCrackin v. Steele, 1 Bibb’s R. 46.
The objects sometimes called for are so connected with the general history or geography of the country, or its legislation, that they will be taken notice of by the courts and deemed of general notoriety, and sufficiently identified without further proof: Such are rivers used as public highways, or thoroughfares between different parts of the country, or which are referred to in general laws and designated as boundaries of counties or other districts of country. Mountains and points on the same may possess this character. And an entry calling for such objects may be supported without proof of notoriety or identity. *316 Such was the entry in Watts v. Lindsey's heirs, 7 Wheat. R. 158. There the “ Ohio river” and. “ Little Miami river” were regarded as sufficiently notorious and identified without further proof. So the notoriety of the “ Lower Blue licks” was presumed. Hart v. Bodley, Hardin’s R. 98. In Speed v. Severe, 2 Bibb’s R. 131, “ Salt river” was regarded as a stream sufficiently- notorious to be taken notice of without proof of its course or locality. So of “ Licking river,” Bowman v. Melton, Ibid. 151. So the “Blue licks,” from their connection with the general history of the country were deemed notorious, and sufficiently identified without further proof. McKee v. Bodley, Ibid. 481. So of the “ Kentucky river,” Winslow v. Holders' heirs, 2 Litt. R. 34.
In other eases, the objects called for possess but a local notoriety oY furnish a description of the land which must be verified and applied by means of facts to be ascertained on the spot; and the party affirming the validity of the entry in such a case must_make out in proof the necessary facts to show the identity of the land intended to be appropriated, and that the calls which it contains are such that the subsequent locator, in the exereise of proper judgment and reasonable diligence, would be enabled to distinguish it from the lands surrounding, so as to appropriate for himself the adjacent residuum.
The entries of the respective parties in this case are of the class just described; and to maintain their validity, it should be shown that there were such objects to be found.as are called for, that their relative positions were such as to mark out and identify the land intended to be entered, and that they or some of them were so well known in the neighborhood as to furnish such a precise and certain description of the land that it could be found by strangers using reasonable diligence and making proper enquiry. But upon examin *317 ing the meagre finding of the jury, it will be seen that it is entirely silent upon these most material subjects. It no where finds that there are streams known as the “ Big Spring fork” and “ Slaty fork” of Elk river; or what is the particular or general course of either. It does not find that there is any tract of land known as “ Lot No. 7,” or as the “ Sherwood and Pennell land,” its situation and boundaries. It does not find there were such lands claimed by Gatewood, as those referred to and described iu the entries, nor any such as are said to be claimed by Mofiett, Gibson and others, nor that there were such entries or surveys as those referred to; nor does it ascertain the land said be to embraced in the deed to Herold and David Hanna, nor that there was such a deed either in fact or by general reputation; nor does it ascertain the positions of any of the objects called for. In short, it wholly fails to find the material facts upon which, and upon which alone, the court could safely undertake to pronounce that either entry had been made with the necessary certainty and precision.
No aid is derived from the finding that the entry and survey of Herold are correctly represented by the lines shaded green on the plat of the surveyor, and that those of McNeel are described by the lines shaded light red. The verity of the plat and report of the surveyors is not ascertained, nor are the objects intended to be represented on the plat found as part of the facts of the case. Nor indeed could they have been so found by reference to the plat, because the lands represented are laid down according to the pretensions of the parties respectively; and the plat is only referred to in the finding for the purpose of exhibiting the exterior boundaries of the surveys. Nor is the defect cured as to the entry of Herold by the finding that his survey was made in conformity with his entry; because, as we have seen, an entry might well *318 be susceptible of identification by means of a survey made by the party himself, and yet its calls might lack that certainty and precision which would be required to render it valid as against a subsequent locator. And moreover, whether a survey does conform to an entry, is a matter to be determined by the court upon the facts found, and not to be disposed of in a summary way by the jury, as in the finding in this case.
Nothing is said in the finding of the jury as to the ownership of the warrants on which the respective entries were made; nor is it found in whose names they were issued. The numbers and quantities of land are the only items of description given. Yet a party who caveats must show a title to the warrant under which his own entry and survey were made, and if he fail to do so, his caveat will be dismissed. Currie v. Martin, 6 Call 28. In that case, it is true the entry of the caveator Martin was made by virtue of part of two warrants issued, one in the name of one McWilliams, and the other in the name of one Goodwin; and it was not proven that they had ever been assigned to Martin. His caveat was accordingly dismissed. Whether upon a special finding of facts in a caveat case the court can infer that the caveator was the owner of the warrant under which the entry was made, where it does not appear in whose name it issued, and no other proof of ownership is offered except that the entry purports to have been made upon it, is a question not free from difficulty. In the view I take of this case, however, it is perhaps not necessary that it should be decided, and I therefore forbear the expression of any opinion upon it.
But there are still other objections to the finding of the jury. I think it is plainly obnoxious to the charge of repugnancy upon its face. Thus it finds that Herold’s entiy and survey are both correctly represented *319 by the lines shaded green on the plat of the surveyor; yet it ascertains that the entry is for three thousand acres, while the survey is for three thousand nine hun- ■ dred and seventy acres, and thus that both quantities are embraced within and bounded by the same identical lines.
Again: The entry of Herold is dated on the 23d of July 1849, and purports to have been made by virtue of part of a warrant of three thousand five hundred and ninety acres, No. 17,826. The survey was made on the 27th of April 1850, and purports to be as to three hundred acres, by virtue of part of a warrant of one thousand acres, No. 18,216, and as to three thousand five hundred and ninety acres, by virtue of a warrant of three thousand five hundred and ninety acres, No. 17,826. But it also finds that the entry of the nine hundred and seventy acres, the excess in the quantity of the survey over the original entry of three thousand acres, was not made till the 7th of August 1850, upwards of three months after the survey of the three thousand nine hundred and seventy acres. Yet it finds that the caveatee’s survey was made in conformity with his entry.
It will be found too, upon examining the evidence given on the trial, that the finding is in one and perhaps a very material particular, not to be reconciled with it. Herold’s entry, as we have seen, purports to be for the same land embraced in the deed from Pennell, and thus in terms is confined to the land embraced within the boundaries of that deed. McNeel’s entry calls to adjoin a tract of land known as the “Sherwood and Pennell land” or “Lot No. 7,” and thus is confined to the land lying outside of the boundaries of that tract. The grant for this lot No. 7 of five thousand acres, and the deed for the three thousand acres of land referred to in Herold’s entry, are given in evidence, and it distinctly appears that the latter is part *320 and parcel of the former, being the northeastern portion thereof. Thus the entries are shown to call for wholly different lands, and there should be no conflict between them. Yet the finding of the jury ascertains that the entry of Herold embraces much the larger part of the land entered by MciSTeel, the interlock being from one thousand to one thousand two hundred acres in extent.
I deem it unnecessary to enquire whether the finding may not be obnoxious to criticism in other respects. . I think it must be apparent that the facts which it ascertains were not sufficient to enable the court to render judgment safely and understandingly upon the merits of . the case. The only alternatives were to dismiss the caveat or to set aside the finding and award a venire facias de novo. The court adopted the former; and in this, according to'the modern and more liberal practice, I think it erred. As the. caveator’s case may be a good one, though certainly not made out by the facts found; and as the merits of the controversy could not be presented and adjudicated upon the finding of the jury, I think it would have been right to set it aside, and to give the parties an opportunity upon another trial, of presenting the real case between them for adjudication.
I am of opinion to reverse the judgment, to set aside the finding of the jury, and to remand the cause for a venire facias de novo.
The other judges concurred in the opinion of Lee, J.
Judgment reversed, and wenire de novo awarded.